UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. O3CR 10396- NG |
| | ) | |
| v. | ) | VIOLATIONS: |
| | ) | |
| KAM WAI CHUI, | ) | 18 U.S.C. § 1341 (Mail Fraud) |
| | ) | 18 U.S.C. § 1956 (Money Laundering) |
| Defendant. | ) | 18 U.S.C. § 982 (Forfeiture) |
| | ) | 18 U.S.C. § 2 (Aiding and Abetting) |
| | ) | |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

## INTRODUCTION

At all times material to this Indictment,

1.    KAM WAI CHUI ("CHUI") was a resident of Massachusetts and an employee of

Equiserve, Inc.

2.    Equiserve, Inc. was a corporation with its principal place of business in Canton,

Massachusetts.

3.    Citizens Bank was a federally insured bank with branches throughout

Massachusetts.

## OVERVIEW OF THE SCHEME

4.    CHUI engaged in an elaborate scheme to defraud shareholders of corporate stock

held in accounts at Equiserve, whereby he diverted stock from legitimate accounts into phony

accounts of his own creation, ordered the sale of the stock, and directed the proceeds of the sales

to addresses controlled by his girlfriend and himself.  Using a dummy bank account set up by his

girlfriend's brother and himself at Citizens Bank, CHUI was able to convert the proceeds of the



sale to his own use.

***Equiserve's Business***

5.     Equiserve was in the stock transfer business, in which publicly traded
corporations retain a company like Equiserve to perform electronic transfers of their stock. One
of the principal benefits of this service is that it enables a corporation and its shareholders to
trade stock without the inconvenient and costly task of redeeming paper stock certificates.

6.     Equiserve also offered a related service to shareholders of its corporate clients
whereby it allowed them to trade shares in personnally-directed accounts. Account holders could
buy or sell shares by instructing Equiserve either by phone or mail, or on its website. Account
holders would pay Equiserve a nominal fee for each transaction. Unlike a traditional stock
broker, however, Equiserve did not provide shareholders with investment advice.

7.     When Equiserve received a sell order from an account holder, it would sell the
shares at prevailing market prices and, unless otherwise instructed, automatically would send a
check of the proceeds by mail to the account holder's address of record.

8.     Equiserve's practice was not to send a record of the transaction to the account
holder.

***Chui's Role at Equiserve***

9.     CHUI was employed at Equiserve as a "Processing Associate" in the "Transfer
Operations Department" at Equiserve's Canton, Massachusetts facility.

10.     When an account holder placed a stock transfer order with Equiserve, the order
would be conveyed to the Transfer Operations Department, where Processing Associates like
CHUI would enter the transaction information into Equiserve's computer system, which in turn

2

would execute the transaction.

11.    Processing Associates gained access to individual accounts by entering a unique user name assigned by Equiserve and a password known only to the user.

### Chui's Scheme to Siphon Shares from Equiserve Accounts

12.    Beginning in approximately June 2001, using his unique username and password to gain access to Equiserve's system, CHUI opened numerous phony shareholder accounts. The accounts bore the names of persons who had not authorized their opening, as well as social security numbers that either did not match the names or did not exist at all.

13.    The addresses CHUI listed on these accounts were addresses controlled by his girlfriend, Jie Ling Cho, including Cho's home address in Quincy, Massachusetts, as well as a Post Office Box that she had opened in Allston at CHUI's request.

14.    Using his username and password to gain access to Equiserve's system, CHUI directed the system on numerous occasions to divert stock from established shareholder accounts into the phony accounts he had created, knowing that he did not have the authorization of the account holders themselves.

15.    The dollar value of the stock transfers ranged from the hundreds to the tens-of-thousands of dollars.

16.    Once transferred, the stock would reside in the phony account for as long as a few months or as little as a day. In either case, CHUI often would transfer stock among several phony accounts in an effort to make his transactions more difficult to trace.

17.    CHUI ultimately transferred most of the shares into phony accounts that bore the nearly identical names "Daniel Chang," "Daniel Chong," or "Daniel Zhang." No one by any of

3

these names had opened an account at Equiserve.

18.    CHUI then would contact Equiserve either by phone, mail or internet, purporting to be "Daniel Chang," "Daniel Chong," or "Daniel Zhang," as the case may have been, and would order the sale of shares from the account.

19.    Once Equiserve sold the shares, it would mail the proceeds by check to the address of record on the account; that is, the addresses that Jie Ling Cho controlled.

20.    CHUI knew that because banks require proof of identification for certain transactions, including cashing checks, withdrawing cash and opening new accounts, he would not be able simply to cash the Equiserve checks. To evade the proof-of-identification requirement, CHUI sought out and obtained the assistance of Tony Cho, the brother of Jie Ling Cho and an employee of Citizens Bank, to open up an account at Citizens Bank in the name of Daniel Chang. Establishing the account allowed CHUI to deposit the Equiserve checks (as deposits do not require proof of identification) and to write checks off the account.

21.    On approximately August 27, 2001, at CHUI's request and on his behalf, Tony Cho in fact opened a checking account (number xxx-xxx-8373) and a savings account (number xxx-xxx-4391) at Citizens Bank in West Roxbury, Massachusetts in the name of Daniel Chang. The address of record on the accounts was 261 West Street, # 2, Boston, Massachusetts 02169, a variant of the address where Jie Ling Cho and he lived, namely *263* West Street, *Quincy*, Massachusetts 02169. CHUI entered Boston as the city on the address and entered a slightly different street number as a way of making his transactions less traceable, knowing that with the correct zip code (and because 261 West Street did not exist), the U.S. Postal Service would deliver any mail concerning the Daniel Chang account to the Quincy address.

4

22.     Jie Ling Cho would retrieve the checks mailed to the addresses to which she had access and deliver them to CHUI, who in turn would deposit them into either the Daniel Chang checking or Daniel Chang savings account at Citizens Bank.

23.     Once the checks from Equiserve were credited to the Daniel Chang bank accounts, CHUI would withdraw the funds by check or, with the further assistance of Tony Cho, by cash. Through his scheme, CHUI was able to defraud Equiserve account holders of over $200,000 worth of stock, converting more than $150,000 of the total to cash.

## COUNTS ONE through FIVE
### (Mail Fraud - 18 U.S.C. § 1341)

THE GRAND JURY FURTHER CHARGES THAT:

24.     Paragraphs 1-23 are realleged and incorporated by reference as though fully set forth herein.

25.     On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

### KAM WAI CHUI

and others known and unknown to the Grand Jury, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing and attempting to do so, did cause persons to place in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the United States Postal Service or by private or commercial carrier, and caused to be deposited matters and things to be sent or delivered by the United States Postal Service or by a private or commercial interstate carrier, and took and

5

received therefrom, such matters and things, and knowingly caused to be delivered by the United States Postal Service mail or by private or commercial carrier according to the directions thereon, such matters and things, as follows:

| COUNT | DATE (on or about) | MATTER MAILED |
|-------|--------------------|---------------|
| 1 | 7/26/01 | Equiserve check # 10253464 to Daniel Chang in the amount of $3,014.19 to 261 West Street, Boston, MA 02169; |
| 2 | 4/23/02 | Equiserve check # 10317026 to Deniel J. Zhang in the amount of $5,906.84 to 261 West Street, Boston, MA 02169; |
| 3 | 5/13/02 | Equiserve check # 10254565 to Anne N. Chan in the amount of $7,886.20 to 261 West Street, Boston, MA 02169; |
| 4 | 5/13/02 | Equiserve check # 10254566 to Evvone L. Chan in the amount of $7,886.20 to 261 West Street, Boston, MA 02169; |
| 5 | 10/15/02 | Equiserve Check 102268308 to Daniel Jing Zhang Trust in the amount of $30,032.50 to PO Box 1135, Allston, MA 02134; |

All in violation of Title 18, United States Code, Section 1341 and 2.

## COUNTS SIX through NINE
### (Money Laundering - 18 U.S.C. 1956(a)(1)(B)(i))

THE GRAND JURY FURTHER CHARGES THAT:

26.     Paragraphs 1-25 are realleged and incorporated by reference as though fully set forth herein.

27.     On approximately August 26, 2001, CHUI asked Tony Cho, an employee at a West Roxbury, Massachusetts branch of Citizens Bank, to open an account for him in the name

of Daniel Chang and provided Tony Cho with account opening information.

28.    On approximately August 27, 2001, Tony Cho opened a checking account (number xxx-xxx-8373) and a savings account (number xxx-xxx-4391) at Citizens' Bank, under the name of Daniel Chang and the fake social security number CHUI provided him, 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. The address of record on the account, provided by CHUI, was "261 West Street, #2, Boston, MA 02169," a slight variant on the address where Jie Ling Cho and, at times, CHUI lived, namely *263* West Street, *Quincy*, MA 02169. CHUI knew with the correct zip code, the U.S. Postal Service would ensure that all mailings would arrive successfully at the Quincy address, and that by falsely listing "Boston" as the city of record, he intended to make his transactions less traceable.

29.    When the Equiserve checks bearing the proceeds of CHUI's fraudulent stock transfers arrived at the addresses Jie Ling Cho controlled, she delivered them to CHUI, who in turn deposited them into either the Daniel Chang saving account or the Daniel Chang checking account at Citizens Bank.

30.    Nearly all of the money that passed through the Daniel Chang accounts came directly from the Equiserve checks bearing the proceeds of CHUI's fraudulent stock sales.

31.    CHUI withdrew these funds in the form of cash or checks addressed to Jie Ling Cho, to whose account he had access. CHUI would then use the money for his own benefit. CHUI also deposited a check written on the Daniel Chang checking account into another account at Citizens Bank, account number XXX-XXX-1292, in the name of Kam Wai Chui.

32.    CHUI used the Daniel Chang and Jie Ling Cho accounts as a means of concealing the source of the funds he deposited into it, namely the proceeds of the sales of stock he stole

from unsuspecting Equiserve stockholders.

33.    On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant,

KAM WAI CHUI

did knowingly conduct and cause to be conducted financial transactions, as set forth below, affecting interstate and foreign commerce, which financial transactions involved the proceeds of specified unlawful activity, that is mail fraud in violation of 18 U.S.C. § 1341, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, with knowledge that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| COUNT | DATE (on or about) | TRANSACTION |
|-------|--------------------|-------------|
| 6 | 9/13/01 | $4,000 cash debit from Daniel Chang account, #xxxxxx8373, at Citizens Bank; |
| 7 | 5/16/02 | $9,500 debit from Daniel Chang account, # xxxxxx8373, at Citizens Bank; |
| 8 | 5/30/02 | $9,500 debit from Daniel Chang account, # xxxxxx8373, at Citizens Bank; and |
| 9 | 10/22/02 | $33,000.00 check (#105) from Daniel Chang to Jie Cho. |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2.

8

## FORFEITURE ALLEGATION - MONEY LAUNDERING

### (18 U.S.C. § 982)

THE GRAND JURY FURTHER CHARGES THAT:

34.    Paragraphs 1-33 are realleged and incorporated by reference as though fully set forth herein.

35.    As a result of the money laundering offenses alleged in Counts Six through Nine of this Indictment, the defendant,

KAM WAI CHUI

shall forfeit to the United States any property, real or personal, involved in such offenses, and any property traceable to such property, including without limitation:

      a.    all funds credited to Citizens' Bank checking account number XXX-XXX-8373, held in the name of Daniel Chang;

      b.    all funds credited to Citizens' Bank account number XXX-XXX-4391, held in the name of Daniel Chang; and

      c.    all funds credited to Citizens' Bank account number XXX-XXX-1292, held in the name of Kam Wai Chui.

36.    If any of the property described in paragraph 35 above, as a result of any act or omission by the defendant --

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

9

      e.     has been commingled with other property which cannot be subdivided without difficulty,

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), which is incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the property described in paragraph 35 above.

     All in violation of Title 18, United States Code, Section 982.

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
Jonathan F. Mitchell
Assistant United States Attorney

Date:  12/17/03 @ 4:30

11